UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JANE DOE, et al.,                    )
                                     )
            Plaintiffs,              )
                                     )
     vs.                             )        Case No. 4:06CV392  CDP
                                     )
SOUTH IRON R-1 SCHOOL                )
DISTRICT, et al.,                    )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

The South Iron R-1 School District has allowed the Gideons to pass out

Bibles to the fifth grade, during class time and on school property, for several years.

After a dispute over the practice arose in 2005, the District was advised by several

sources that allowing the Bible distribution during school hours was

unconstitutional.  It rejected that advice, overruled the decision of its superintendent,

and voted to allow the distribution.  Bibles were again distributed in October of

2005.  Plaintiffs are parents who object to the distribution.

A week before the hearing scheduled on plaintiffs' request for preliminary

injunction, the School District considered the issue again and adopted a new policy

that would allow outside groups to distribute literature, including Bibles, on school

property.  The new policy is similar to one that the District had rejected a year

before.  Plaintiffs argue that the new policy continues the School District's improper establishment of religion, in violation of the First Amendment.  The District argues that any restrictions on the Gideons' or other groups' distribution of Bibles to students would require it to engage in viewpoint discrimination in violation of the First Amendment.

It is highly likely that plaintiffs will prevail on their claim that the new policy was introduced for the purpose of promoting Christianity.  Defendants cannot rely on qualified immunity where they knew their past actions were unconstitutional.  I will issue the preliminary injunction requested by plaintiffs, and I will deny defendants' motion to dismiss.  Additionally, I will set this case for a scheduling conference so that a trial on the merits can be held promptly.

## Background

Plaintiffs Jane Doe and Lesa Alcorn, parents of children who attend South Iron Elementary School, brought this action to challenge the South Iron R-1 School District's decision to allow members of Gideons International to distribute  Bibles to fifth graders during the school day.  Alcorn is the mother of two children who attended the School and who received Bibles from the Gideons.  Doe is the mother of two children who attend the School but have yet to reach the fifth grade. Plaintiffs allege violations of the First Amendment and the Missouri Constitution,

and request declaratory and injunctive relief as well as nominal damages.

The District has for some time allowed members of Gideons International, a self-described "missionary arm of the [Christian] church," to come into the School and distribute Christian Bibles to fifth graders during class time. In early 2005, Homer Lewis, then-superintendent of the District, decided to stop this practice because he believed it violated the Establishment Clause. At the District's Board of Education meeting on February 7, 2005, a representative of the local Ministerial Alliance asked the Board to reconsider Lewis' decision. Lewis explained to the Board that he believed the distribution of Bibles was illegal based on information he had learned during meetings over the previous summer and on advice he had received from the District's attorney and the District's insurance company. He further stated that if the Board wanted to allow the distribution of Bibles at school, it should adopt an "open forum" policy that would not allow discrimination against any organization. The Board did not approve the suggested open forum policy, but instead voted to "pretend this meeting never happened, and to continue to allow the Gideons to distribute Bibles as we have done in the past."

The Bible distribution was again discussed by the Board at a September 6, 2005 meeting. The Board discussed alternative arrangements, such as letting the students distribute the Bibles. The Gideons, however, insisted that they be present

to distribute the Bibles. The Board then voted to allow the Gideons to come into the school that fall and distribute Bibles. Shortly after this meeting, Superintendent Lewis submitted his letter of resignation, effective at the end of the school year, indicating that he felt the Board was "headed down a path that is both illegal and costly" to the District.

On October 4, 2005, the principal of South Iron Elementary School, Shirley Beisner, accompanied two members of the Gideons Association to the fifth grade classrooms, where the Gideons made a presentation and then distributed the Bibles to the students. The distribution took place at 2:30 p.m. during a school day, and attendance was mandatory.

This action was filed on February 28, 2006. The lawsuit was discussed at Board meetings the next two months. At the April 3, 2006 meeting, the president of the Board, Jim Skaggs, moved to rescind the motion allowing the Gideons to distribute Bibles. This motion failed. At the May 1, 2006 meeting the District's attorney reported on the refusal of the District's insurer to represent the District in the lawsuit, and he again advised the Board that allowing the Bible distribution during instructional time violated the federal and state constitutions. The Board took no action to change the policy.

As reflected in my earlier orders, defendants did not respond to this lawsuit in

a timely manner, but eventually they retained new counsel and filed a motion to dismiss. After defendants entered the case, I set plaintiffs' motion for preliminary injunction for hearing on August 17, 2006, which was the first day of the new school year. Two days before the hearing defendants filed a reply brief related to their pending motion to dismiss, and in that brief they indicated that on August 7, 2006, the District had adopted a new policy. Defendants argue that the need for injunctive relief is now moot. Plaintiffs urge that injunctive relief is still necessary.

The new policy allows outside groups to distribute printed material to students, subject to certain conditions. The policy requires any group wishing to distribute materials to provide the materials to the Superintendent 48 hours before the requested time of distribution; if the Superintendent does not respond within 48 hours then the materials may be distributed. Distribution will be either directly in front of the administrative offices or in the cafeteria, and the literature may be distributed either before or after the school day, before or after classes, or during lunch time. All requests will be approved unless the material is libelous or violates law, is obscene, advertises products or services for sale, endorses a candidate for public office, promotes alcohol, tobacco, drugs or other illegal activity, or is likely to cause substantial disruption to the school.

The policy provides for appeals to be submitted in writing to the Board of

Education, for appeals to be heard at the next regularly scheduled Board meeting, and for the Board to provide its decision within five days of that hearing.

The policy also provides that "No student may in any way be compelled or coerced to accept any materials being distributed by any person distributing such materials or by any school official." It also provides that it does not apply to students who may wish to distribute printed materials to fellow students.

## Discussion

At the hearing plaintiffs' counsel argued that injunctive relief is still necessary, and asked the court to enjoin defendants from distributing Bibles or allowing others to do so on school property during the school day to elementary school students. Defendants argued that the new policy is constitutional, and urged that injunctive relief of any sort is now moot. The last-minute change in policy, coupled with the lack of any significant factual record, confuses the issues in this case. Except for the briefs filed just before the hearing, all the briefs focus on the past practice and not on the new policy. Additionally, neither party presented evidence other than the minutes of the School Board meetings. Both parties have relied on the School Board minutes, and both sides agree that it is appropriate for me to consider the issues in light of the factual background revealed in the minutes. They also agree that the issues before me are largely legal issues. The issues

presented by the motion for preliminary injunction and the motion to dismiss are, of course, intertwined, and so I will discuss them together.

## The Board's Past Actions

Defendants seek dismissal based on qualified immunity, and argue that their past actions do not violate any clearly established constitutional rights of the plaintiffs. Qualified immunity protects government officials from suit unless their conduct violates a clearly established constitutional right of which a reasonable person in the defendant's position would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). The purpose of the doctrine is to "allow public officers to carry out their duties as they believe are correct and consistent with good public policy." Anderson v. Larson, 327 F.3d 762, 769 (8th Cir. 2003)(quoting Sparr v. Ward, 3006 F.3d 589, 593 (8th Cir. 2002)).

The Establishment Clause of the First Amendment "mandates governmental neutrality between religion and religion, and between religion and nonreligion." McCreary County v. American Civil Liberties Union, 125 S.Ct. 2722, 2733 (2005). Numerous cases have held that distribution of Gideon Bibles to elementary school students on school property and during school hours violates the Establishment Clause. See Berger v. Renesselaer Central School Corp., 982 F.2d 1160 (7th Cir. 1993); Meltzer v. Board of Public Instruction, 548 F.2d 559, 575 (5th Cir. 1977);

Chandler v. James, 985 F. Supp. 1094, 1101 (N.D. Ala. 1997); Goodwin v. Cross County School Dist. No. 7, 394 F. Supp. 417 (E.D. Ark. 1973); Tudor v. Board of Education, 100 A.2d 857, 868 (N.J. 1953); Brown v. Orange County Board of Public Instruction, 128 So.2d 181, 185 (Fla. Dist. Ct. App. 1960).  All of these cases held unconstitutional the exact Gideon program that defendants approved here.  These cases provide a far stronger showing of clearly established constitutional law and likelihood of success on the merits than appears in most qualified immunity and preliminary injunction cases.

Notably, none of the cases cited by defendants approved distribution of Bibles in the classroom.  Berger is the most recent appellate case directly on point with the District's past actions, involving the same Gideon program of distributing Bibles to fifth graders that is at issue here.  The Seventh Circuit considered and rejected all the same arguments that defendants make here.  In particular, the Court rejected the argument that refusing to allow the distribution would constitute impermissible viewpoint discrimination.  The Berger Court concluded that the board's free speech argument did not excuse the blatant violation of the Establishment Clause that occurred when the board sanctioned the distribution of bibles during the school day.

Similar to the facts here, the Bible distribution in Berger occurred in

classrooms "during regular school hours ordinarily reserved for teaching." Berger, 982 F.2d at 1166 n.5. The Berger Court emphasized the difference between the "captive audience" of a classroom and the use of the school facility for activities held after-hours by distinguishing the Supreme Court decision Widmar v. Vincent, 454 U.S. 263 (1981).

> In *Widmar*, the Supreme Court held that a university could not exclude a religious organization from after-school use of its facilities after allowing non-religious groups similar access. Yet *Widmar* differs from this case in one critical respect: the religious group in *Widmar* sought access to classrooms after school, the Gideons seek access to classrooms during school. In other words, the organization in *Widmar* sought access to public school *facilities*. The Gideons, by contrast, are not particularly interested in public school classrooms for their physical properties; indeed, it is doubtful that they would seek access to classrooms were they not populated by young children. There was no captive audience in *Widmar* - the classrooms were empty. . . . That the Gideons seek access to children and not facilities, as in *Widmar*, is self-evident.

Berger, 982 F.2d at 1166-67.

Defendants urge, however, that Establishment Clause jurisprudence is not at all clear, and that more recent cases look far more favorably on the practice than the cases that have considered it in the past. They point to cases such as Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819 (1995), and Good News Club v. Milford Central School, 533 U.S. 98 (2001) for the proposition that if a state actor opens its facilities to others, it must also open them to religious groups.

While there is no doubt that the Supreme Court has made clear that a government cannot be hostile to religion by engaging in viewpoint discrimination, there is simply no evidence that those cases have any applicability to the District's past actions.

The recent Supreme Court cases have expanded religious groups' access to school funding and facilities, but none of those cases involved distributing religious materials or holding religious activities in the classroom during the school day.  See Milford, supra (excluding religious club from meeting after hours at school is unconstitutional viewpoint discrimination); Rosenberger, supra (denial of funding amounted to viewpoint discrimination); Lamb's Chapel v. Center Moriches Union Free School District et al., 508 U.S. 384 (1993)(violation of First Amendment to deny church access to school facility for religious film series).

Before changing their policy, defendants rehashed the arguments presented by the school board in Berger, and argued that they had an "open forum" all along. The facts here are the same as those in Berger, and the authenticity of any past "open forum" policy is similarly suspect.  The Board's minutes directly contradict the defendants' argument that they had an open forum in the past.  After the Board was told, by its superintendent, its lawyer, and its insurance company, that it was violating the constitution, the Board considered, and rejected establishing an open forum policy.  Minutes of a later meeting show that the president of the Board stated

that the district had an open forum policy, but that statement is contrary to the earlier minutes, and all the evidence indicates that the open forum policy referred to in the later minutes was either non-existent or was formulated in response to this lawsuit. As the Board meeting minutes indicate, when Superintendent Lewis suggested that the Board adopt an open forum policy in the spring of 2005, the Board rejected this proposition and voted "to pretend like this meeting never happened." There was no further discussion of the "open forum" policy in the Board meetings until after this lawsuit was filed.

Further, even if the Board did have such a policy, there has been no development in Establishment Clause jurisprudence in the years since <u>Berger</u> was decided that would suggest that an open forum policy sanctions the conduct at issue here. No case has held that a school district must allow students to receive Bibles in the classroom to avoid the district's committing impermissible viewpoint discrimination. Even in <u>Peck v. Upshur County Board of Education</u>, 155 F.3d 274 (4th Cir. 1998), on which defendants rely, the court distinguishes the facts of this case from distribution of Bibles in the hall or library: "The Bibles are not distributed in the formal classroom setting, are not part of classroom activities, and are not part of the schools' curriculum." <u>Id.</u> at 282.

<u>Jabr v. Rapides Parish School Board</u>, 171 F.Supp.2d 653 (W.D. La. 2001) is

a district court case involving a situation similar to that here, although it was not a Gideon program. This case involved the school principal "making Bibles available" in the principal's office to fifth grade students as he wished each one a "Merry Christmas." Id. at 659. The plaintiff's daughter, who is Muslim, alleged that she was pressured to take the Bible. The District Court considered the facts under various Establishment Clause tests, and concluded that whichever test was used, the district had violated the Constitution. I find the Jabr court's reasoning to be both persuasive and directly applicable here. The principal's office setting has the same coercive effect and captive audience as the classroom. The Court emphasized the coercive effect of the principal's office setting – similar to the captive audience in the classroom.

This analysis shows that defendants cannot be entitled to qualified immunity for their actions during 2005. A reasonable person in defendants' position would have known that allowing the Gideon Bible distribution in the classroom violated the Establishment Clause. There were numerous court cases directly on point, involving the exact same activities that the District approved here. Defendants were advised by the school Superintendent, by their lawyers, and by their insurance company that their actions violated the constitution. Qualified immunity is intended to protect government actors who act reasonably and who do not realize that their

actions violate the constitution. The opposite occurred here. These defendants were repeatedly told that their actions violated the Constitution, but they chose not to heed those cautions. Even if they did so out of some hope that they could challenge the clearly-established law by their actions, qualified immunity would still not apply. Qualified immunity does not protect government officials who knowingly disregard clearly-established law, even if they do so out of a good faith belief that the law should be changed. Otherwise, government officers could violate citizens' constitutional rights with impunity.

Plaintiffs showed likelihood of success on the merits with regard to the practice that the School Board had followed in the past, and defendants are not entitled to qualified immunity for the past violations of the law alleged in the complaint.

## Does the New Policy Moot the Request for Injunctive Relief?

I must, however, consider whether the new policy moots the need for an injunction. I conclude that it does not. Defendants have stated their intention to allow distribution of Bibles to elementary school children (no longer just to fifth graders) on school property and during the school day, if requested. Although no request has yet come in, the new policy has only been in effect for a few weeks, and past events show that such a request is highly likely to be forthcoming, if not from

the Gideons, then from the local Ministerial Alliance or a similar group. If such a request is made, it will be granted.

Although the new policy provides a method to appeal, that provision does not give any recourse for people such as plaintiffs who oppose distribution of religious literature. Because the distributions will take place 48 hours after the request is made, the appeal provision does not allow a distribution to be blocked in advance. In other words, the appeal provision gives a remedy to a group whose request to distribute literature is denied, but it gives no remedy to those who might oppose the distribution if a request is granted. A written appeal to the Board is to be considered at the next regularly scheduled Board meeting, and even then the Board only has to decide the case within five days of the hearing. Any Bible distribution to which a parent objects would have already taken place before any appeal is heard. The policy does not even provide for notice to the parents of any proposed distribution of Bibles or other material, so there is no way for a parent to stop any distribution that may occur. Thus, it is apparent that this case will not simply go away, as plaintiffs continue to object to any distribution of Bibles on school property during school hours.[1]

---

[1]The new policy does render moot defendants' standing arguments, however, because now there is no dispute that the plaintiffs' children will actually be affected by any distribution of Bibles, since the policy would allow Bible distribution to children of all ages.

I must therefore determine whether preliminary injunctive relief should be granted, because plaintiffs maintain that their constitutional rights continue to be at risk. The familiar four-factor test applies, and I must look at: (1) the threat of irreparable harm; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties to the litigation; (3) the likelihood that the movant will succeed on the merits; and (4) the public interest. <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1991).

As I stated above, plaintiffs have easily shown that they were likely to succeed on the merits before the implementation of the new policy. Since the district indicates that it will no longer allow the Gideon classroom distribution,[2] I must examine the plaintiffs' likelihood of succeeding on a claim that any Bible distribution allowed under the new policy violates the Establishment Clause. Although this is obviously a much closer case, I believe they have so shown.

No reported case has held that distribution of Bibles to elementary school students during school hours and on school property – even if outside the classroom – is permissible. To the contrary, every case that has considered the issue has decided that the Constitution does not allow it. None of the Court of Appeals cases

---

[2]The policy does not actually say that, and there is no evidence before me that this is in fact the District's intent, other than its new counsel's representation at the hearing. I will, for purpose of this motion, accept that representation as true.

cited by the defendants dealt with policies as broad as that here. Even Peck, in which the Fourth Circuit upheld a school policy that would allow distribution of Bibles or other religious literature to secondary school students, found the same policy unconstitutional to the extent it would allow distribution to elementary school students. 155 F.3d at 288, n.*.

Defendants argue that the Supreme Court in Milford, decided after Peck, suggested that the Fourth Circuit was wrong to limit its holding to secondary students, and that the same policy would be constitutional for elementary students. In support of this proposition defendants point to recent Court of Appeals opinions interpreting Milford that have found distribution to elementary school students of flyers announcing religious community activities constitutionally permissible. See Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Township School District, 386 F.3d 514 (3rd Cir. 2004)(Good News Club must be allowed to distribute flyers under district policy allowing other community groups to do so); Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Public Schools, 373 F.3d 589 (4th Cir. 2004)(same); Rusk v. Crestview Local School District, 379 F.3d 418 (6th Cir. 2004)(school that distributed information from a variety of community groups could not exclude religious groups); Hills v. Scottsdale Unified School District, 329 F.3d 1044 (9th Cir. 2003)(distribution of

summer camp brochure with religious content does not violate the Establishment Clause).

Defendants argued at the hearing that this Court may not engage in line drawing between the distribution of Bibles and the distribution of flyers in determining what is permissible religious speech. Distinguishing Bibles from flyers, however, does not require drawing a line that has not been drawn before. The Supreme Court has stated that "the place of the Bible as an instrument of religion cannot be gainsaid." School Dist. of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 224 (1963). Bibles are different. Bibles are religious literature and many Christians believe that they contain the word of God. Bibles do not advertise club meetings or summer camps. The audience for a Bible is the person receiving one. Flyers are announcements of activities occurring at a different time, many of which may require parental choice regarding whether a child participates.

In Rusk, relied on by defendants, the Sixth Circuit determined whether a violation of the Establishment Clause had occurred by deciding whether a reasonable observer would perceive the state action as endorsing religion. 379 F.3d at 420. In making this determination the court first identified the relevant community of observers to be the parents. The Court reasoned that the students were not the correct perspective from which to assess the practice of flyer

distribution because "students cannot participate in any of the advertised activities without their parents' permission." Id. at 421.  The Sixth Circuit went on to find that even if the relevant audience for the flyer distribution was children, the heightened concerns about the impressionability of elementary school children are not enough to amount to an impermissible endorsement of religion.  This finding was based on the court's reading of Milford as the Supreme Court's "rejection of the age and impressionability of elementary school students as grounds for ruling that allowing a religious club to meet in school classrooms would violate the Establishment Clause." Id. at 424.

Defendants – and the Rusk case – are interpreting the Supreme Court's language out of context.  Milford dealt with the constitutionality of allowing a religious club to meet on school premises – not the distribution of an 'instrument of religion' directly to school children.  In terms of the impressionability of elementary school children, the Court stated:

> [W]hatever significance we may have assigned in the Establishment Clause context to the suggestion that elementary school children are more impressionable than adults ... we have never extended our Establishment Clause jurisprudence to foreclose private religious conduct during nonschool hours merely because it takes place on school premises where elementary school children may be present.

533 U.S. at 115 (emphasis added).  The Court dismissed the impressionability

argument, stating: "[I]t simply is not clear what, in this case, [the elementary school children] could be pressured to do." 533 U.S. at 117 n.7. In contrast, there is no doubt here what the children are being pressured to do: take a Christian Bible. Because the context of <u>Milford</u> is different from that here, impressionability of the children and the threat that they may feel coerced to accept the Bibles are of higher concern.

Additionally, the policy here does not provide many of the safeguards that the policy in <u>Peck</u> required for distribution of Bibles to secondary students. Of particular importance is the omission of any requirement prohibiting a school employee, such as a teacher or member of the School Board, from being involved in Bible distribution.[3] Under the new policy a school official – such as the principal who in the past lead the Gideons into the fifth grade classroom – could be directly involved in the Bible distribution. For impressionable elementary school children, this would be a clear endorsement of religion. Such a scenario would be very similar to the facts of <u>Jabr v. Rapides Parish School Board</u>, discussed earlier, where a district court in Louisiana found the principal's actions, under three different tests, to violate the Establishment Clause. 171 F. Supp. 2d 653. The policy in <u>Peck</u> also

---

[3] In <u>Peck</u>, the school policy allowed only private citizens "not affiliated in any way with the school" to sit at the table displays where Bibles and other religious literature were distributed. 155 F.3d at 275.

limited Bible distribution to a single day of the year. 155 F.3d at 288. The policy at issue here has no limit on the number of days each year that a group could distribute Bibles at the school.[4]

None of the cases cited by defendants allowed Bible distribution to elementary school children on school property during the school day. Although the Fourth Circuit has found such a distribution allowable for secondary students, even that court recognized that Supreme Court precedent required a different rule for elementary students. Nothing in the cases relied on by defendants convinces me that allowing the Bible distribution proposed here is permissible under the Establishment Clause.

Finally, I note that the evidence of the School Board's behavior here raises a very strong inference that the purpose of this new policy is to promote Christianity by providing a means for Christian Bibles to be distributed to the elementary school students. Although there is no doubt that the Establishment Clause "lacks the comfort of categorical absolutes," McCreary County, 125 S.Ct. at 2733, n. 10, there

---

[4] Other important safeguards present in Peck but absent here: signs on the tables informing the students only that they should feel free to take the Bibles or other materials offered, disclaimer on the tables renouncing any sponsorship or endorsement by the school, no one is allowed to enter classrooms to announce the availability of the material, and no school assembly or announcement is allowed concerning the availability of the materials. See Peck, 155 F.3d at 275.

is also no doubt that the Clause still means that a government cannot take actions for the purpose of promoting Christianity, which is what the Board wants to do here. In McCreary the Supreme Court reaffirmed that, at least in contexts like this one, the "purpose" test of Lemon v. Kurtzman, 403 U.S. 602 (1971), is still important. Like the county government in McCreary, the school district here reaffirmed its commitment to promoting Christianity even after being told that this violated the Establishment Clause. Like the county in McCreary, the school district here changed counsel and then modified its promotion of Christianity at the last minute, and then argued that its new actions met constitutional muster. The defendants in McCreary argued that only its last actions should be considered, but the Court rejected that argument: "They argue that purpose in a case like this one should be inferred, if at all, only from the latest news about the last in a series of governmental actions, however close they may all be in time and subject. But the world is not made brand new every morning . . ." 125 S.Ct. at 2736-37. The Court went on to remind us that common sense still has a role: "[Defendants'] position just bucks common sense: reasonable observers have reasonable memories, and our precedents sensibly forbid an observer 'to turn a blind eye to the context in which [the] policy arose.'" 125 S.Ct. at 2737. As in McCreary, the evidence presented here shows a religious purpose.

The evidence presented at this stage of the case, of course, is limited to the documents that the parties have provided to me, and the reasonable inferences that I can draw from them. The parties have agreed that the actions taken by the District are not disputed, and that the minutes are accurate reflections of what happened. From this evidence only one purpose emerges: promotion of Christianity by distributing Christian Bibles to elementary school students. Perhaps a full record might lead to a different conclusion, but for purposes of this preliminary injunction, the record before me is sufficient to show that plaintiffs are likely to succeed on the merits of their challenge to the new policy, as well as on their challenge to the old practice.

The only other Dataphase factor that requires much discussion is whether plaintiffs have shown that they are threatened with imminent irreparable harm. The parties' briefs on this issue dealt with the ages of the plaintiffs' children and the fact that they either are not yet in fifth grade or have already been in fifth grade. These arguments no longer make sense here, because the new policy would allow distribution of Bibles to all children at the school, which the parties have explained includes grades kindergarten though sixth. The defendants have indicated that a request to distribute Bibles would be approved under the new policy, and the policy itself shows that the plaintiffs would have no advance notice nor any way of trying

to stop the action. Thus, they have shown that they are faced with immediate and irreparable harm.

The balance of the equities and the public interest also favor granting the injunction. There will be no harm to the district by not allowing distribution of Bibles until this case can be resolved on the merits. If the district is concerned that it would be improper to implement the new policy in light of the injunction, it can simply suspend the new policy. It never had a policy before, so it cannot claim that it would be harmed by not having one now – i.e., returning to the status quo absent the unconstitutional behavior. The public interest, of course, supports the Establishment Clause of the Constitution, and thus it also supports an injunction that is necessary, as I have found here, to prevent a governmental entity from violating that clause.

## Conclusion

I will grant the preliminary injunction that plaintiffs seek. I will also deny defendants' motion to dismiss. Although I have not discussed all of the arguments raised by that motion, I have discussed the ones that I consider to remain of particular importance, and I agree with plaintiffs' that the other arguments are not sufficient to grant a dismissal under the stringent standards of Rule 12(b)(6), Fed. R. Civ. P. Development of a further record, of course, will be helpful, but I cannot say

that plaintiffs' have failed to state a claim on which relief may be granted for any of the reasons urged by defendants in their motion.

I will also set this case for a scheduling conference, and will treat it as an expedited case. Pending the conference, the parties should consider the following items. As I am denying defendants' motion to dismiss, their answer is now due within ten days. Plaintiffs, however, may wish to amend their complaint given the new policy, and so I will direct them to file any amended complaint no later than **September 12, 2006**. Defendants' response to any amended complaint shall be filed no later than **September 22, 2006**. If plaintiffs do not amend their complaint by the date stated, then defendants' time for answering the original complaint is extended until **September 22, 2006**.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for a preliminary injunction [# 18] is granted, as follows: Defendants and any persons acting in concert with them are enjoined from distributing or allowing distribution of Bibles to elementary school children on school property at any time during the school day. This injunction shall remain in effect until trial on the merits of the case, or until otherwise ordered by the Court.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [#25] is

denied.

**IT IS FURTHER ORDERED** that plaintiffs' motion for default judgment [#28] is denied.

**IT IS FURTHER ORDERED** that the parties' motions for leave to file reply brief and sur-reply brief [#36, 39] are granted, and I have considered the matters contained in both of those proposed briefs.

**IT IS FURTHER ORDERED** that defendants' motion to substitute party [#38], as supplemented at the hearing, is granted, and Darren Kelley is substituted as a defendant for Jim Skaggs, and Badley Crocker is substituted as defendant for Homer Lewis.

**IT IS FURTHER ORDERED** that defendants' time for responding to the original complaint (or any amended complaint) is extended to **September 22, 2006**, and plaintiffs shall file any amended complaint no later than **September 12, 2006.**

This case will be set for a scheduling conference by separate order.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of September, 2006.